# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**,

v.

**JAKE MAXWELL,**

    **Defendant.**

**Case No. 1:22-CR-00099-RJL**

## DEFENDANT'S MOTION TO CHANGE VENUE

Defendant, Jake Maxwell (hereinafter "Defendant" or "Mr. Maxwell") , files this motion and respectfully moves this Honorable Court for a transfer of venue for his trial by an impartial jury under the Fifth and Sixth Amendments and pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure.

## BACKGROUND

On November 10, 2021, a grand jury was empaneled, sworn and returned an Indictment recommending seven (7) charges against Mr. Maxwell. Despite this, on or about December 9, 2021, Mr. Maxwell was asked to meet with FBI Agents at their office in Atlanta, Georgia and was misled into providing a statement. At no point was Mr. Maxwell advised of his *Miranda* rights. On February 9, 2022, Mr. Maxwell was charged by criminal complaint on charges of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4); and Acts of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F). On February 10, 2022 Mr. Maxwell was arrested in the Northern District of Georgia. On February

17, 2022, Mr. Maxwell made his initial appearance in the United States District Court for the District of Columbia, and on March 25, 2022, Mr. Maxwell was indicted on the same charges above. For the below reasons, Mr. Maxwell respectfully requests this Court enter an Order transferring the case to the Middle District of Georgia.

## <u>ARGUMENT</u>

The Fifth and Sixth Amendments of the United States demand criminal defendants receive a fair and impartial trial. "The theory in our system of law is that conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence[.]" *Patterson v. Colorado*, 205 U.S. 454, 462 (1907). Accordingly, Justice Hugo Black observed that the American justice system "has always endeavored to prevent even the probability of unfairness." *In re Murchison*, 349 U.S. 133, 136 (1955). Incorporating these principles, Federal Rule of Criminal Procedure 21(a) mandates that the trial court "must transfer [a criminal] proceeding . . . if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a).

Factors to be considered by the court in determining whether to grant a request for change of venue based upon prejudicial pretrial publicity include: (1) the size and characteristics of the community; (2) the nature and extent of pretrial publicity; (3) the proximity between the publicity and the trial; and (4) evidence of juror partiality. *United States v. Skilling*, 561 U.S. 358, 378-381 (2010)*; see also*, *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966)(stating that the Supreme Court "has insisted that no one be punished for a crime without 'a charge fairly made and fairly tried in a public tribunal free of prejudice, passion, excitement, and tyrannical power"), *citing Chambers v. State of Florida*, 309 U.S. 227, 236—237, 60 S.Ct. 472, 477 (1940).

Where local prejudice, induced or heightened by publicity, would deprive a defendant of a fair and impartial jury, both due process and the Sixth Amendment not only permit, but *require* that the trial be moved. *Skilling*, 561 U.S. at 378 (holding that "[t]he Constitution's place-of-trial prescriptions [in U.S. Const. Art. III, § 2, cl. 3 and Amtd 6] … do not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial—a basic requirement of due process[.]")(quotation omitted).

In fact, the Supreme Court considers the potential for undue prejudice so high that it has consistently overturned convictions where the district court failed to grant a request for change of venue after the defendant demonstrated the substantial likelihood of prejudicial pretrial publicity . See, e.g. *Rideau v. State of La.*, 373 U.S. 723, 726 (1963) (finding that since the Constitution guarantees due process, so that "a person accused of committing a crime is vouchsafed basic minimal rights . . . it was a denial of due process of law to refuse the request for a change of venue, after the people of Calcasieu Parish had been exposed repeatedly and in depth to the spectacle of Rideau personally confessing in detail to the crimes with which he was later to be charged"); *Irvin v. Dowd*, 366 U.S. 717, 728 (1961) (vacating a conviction and death sentence for the trial court's failure to transfer venue for community publicity).

More than two years later, the events of January 6, 2021 are still regularly discussed on national news platforms.  Hundreds of articles are still released daily.  There is even a roughly 100-page Wikipedia entry solely dedicated to the events that took place that day in the Capitol. To date, over 1,000 individuals have been charged with the events surround January 6, 2021.[1] Among these individuals is Mr. Maxwell, who has already found his name slandered all over the internet.[2]  The Government's charging documents contains incendiary and demonstrably false

---

[1] https://www.insider.com/all-the-us-capitol-pro-trump-riot-arrests-charges-names-2021-1
[2] https://www.11alive.com/article/news/special-reports/capitol-insurrection/jake-maxwell-arrested-athens-georgia-

allegations that Mr. Maxwell vehemently denies. Furthermore, in presenting this matter before a grand jury (comprised entirely of residents of the District) to indict Mr. Maxwell, the Government used little to no facts to recommend charges against him, thereby confirming Mr. Maxwell's assertion that the jury pool is already so incredibly tainted. The citizens of the District of Columbia experienced the events of January 6, 2021 in their own backyard and it would be impossible to expect them to impartially judge an individual accused of being involved in the violence that ensued.

## A. A transfer is required because of circumstances unique to this case.

The widespread and inaccurate portrayal of Mr. Maxwell in the news media, largely stoked by the Government's reckless false claims,  should be more than sufficient as reason for the Court to transfer this matter.   However, Mr. Maxwell's case also presents several unique circumstances that compel a change of venue.

Most notably, Mr. Maxwell's case is tied to an event that was so impactful on the psyche of District residents that it is *per se* impossible for local jurors to reach a fair and impartial verdict. For weeks following the events of January 6th, District residents lived under what could be described as martial law, with members of the National Guard roaming the streets.  Large portions of the city were shut down for weeks and residents were placed under a 6 p.m. curfew. Bridges and roads into the District were closed off for a period of time. The Department of Homeland Security declared that government offices were potential targets of "Domestic Violent Extremists."

january-6-capitol-riots/85-cc083bf2-a8c6-4536-8dfa-ad2510ba0497;
https://www.redandblack.com/athensnews/athens-man-arrested-in-connection-with-u-s-capitol-insurrection/article_e492d730-8fa3-11ec-b0f4-d75f95e9ecf5.html;  https://www.ajc.com/news/athens-man-arrested-for-assaulting-police-in-jan-6-riot/B65BOJQI6ZCJLMS76PLS4W4N24/;
https://www.wsbtv.com/news/local/atlanta/athens-man-arrested-assaulting-law-enforcement-during-jan-6-attacks-us-capitol/GNQC4XDANJDMDOL2FUT5ZQ3OBQ/;
https://www.onlineathens.com/story/news/2022/02/11/athens-ga-capitol-riot-charges-assault-officer-jake-maxwell/6749709001/.

Even if District residents were not fearful of those arrested in connection with January 6th based upon the Government's allegations of what occurred that day, they would at a minimum be resentful of these individuals for the impact their actions had on the daily lives of those who live in the city.  As such, it will be nearly impossible for Mr. Maxwell to receive a fair and impartial trial with a jury pool from the District. The Court, respectfully, should find that by the very nature and circumstances of the allegations against Mr. Maxwell, that the community impact from January 6th is "so profound and pervasive" that it would be nearly impossible to seat a fair and impartial jury. See, e.g., *United States v. McVeigh*, 918 F. Supp. 1467, 1470 (W.D. Okla. 1996); *United States v. Awadallah*, 457 F. Supp. 2d 246 (S.D.N.Y. 2006) (suggesting that had the defendant, who was charged with perjury, actually participated in the 9-11 attacks on New York, "the effects that a massive, disastrous event has wrought on the jury pool" would require a change of venue).[3]

This case is unique in that *every* potential juror in the District was impacted by the events on Capitol Hill on the 6th of January. The second unique circumstance about the instant case is that the overwhelming majority of District residents despised Mr. Maxwell and similar defendants before January 6th given their political affiliation.

Mr. Maxwell cannot receive a fair trial in the District because he is the victim of D.C.-based systemic race-baiting. The President, Attorney General, Speaker of the House, prominent politicians, and media personalities have engaged in the most shameful race-baiting regarding Mr. Maxwell and other defendants. They have repeated false claims that Mr. Maxwell and others are

---

[3] In *McVeigh*, the district judge made two rulings on venue changes. The first decision was to grant a change a venue from the Western District of Oklahoma, where Oklahoma City is located. *McVeigh*, 918 F. Supp. at 1470. That decision was based on the obvious impact that the Oklahoma City bombing had on the community. The second, and more difficult issue, for the district judge, was whether to transfer the trial to the Eastern District of Oklahoma, or to move the case out of state. In deciding to transfer the trial to Colorado, the district judge ruled that the "emotional burden of the explosion and its consequences" and the community prejudice against the defendants necessitated a transfer out of state. *Id*. at 1473.

"white supremacists," "white nationalists," and "racists." The hatred toward the January 6th defendants has nothing to do with their educational levels or achievements, and everything to do with the person they chose to vote for. This systemic hatred, in turn, makes it impossible for Mr. Maxwell to receive a fair trial in the District. President Biden, in a speech ironically advertised as intended to heal America's racial divide, referred to January 6th protesters as "thugs, insurrectionists, political extremists, and white supremacists."[4] Further, at his confirmation hearing, Attorney General Merrick Garland pledged to "supervise the prosecution of white supremacists and others who stormed the Capitol on 6 January."[5] District-based media outlets run daily stories falsely claiming that those arrested in connection with the events of January 6th were "white supremacists" or "white nationalists."

There exists in the Nation a disturbing pattern wherein politicians, media, and talking heads make unsubstantiated claims of racism against others who do not believe in the same system of values as themselves.  Such people have discovered the crass, short-term political gain to be had by skipping over such outdated and quaint concepts as the presumption of innocence, burden of proof, and due process of law, among others. In the minds of these accusers, some Americans are "so bad" that traditional notions of Constitutional fairness do not apply.  These individuals sit in their ivory towers and act as judge, jury, and executioner over those they deem beneath them.  Such thinking ought to be an anathema to members of the Bench and Bar, and indeed, to all patriotic Americans and appalling to civilized people everywhere democracy is said to flourish. The prevailing left's systemic race-baiting fanned by the media is un-American, disgusting, vile, and vitiates Mr. Maxwell's ability to receive a fair trial in the District. Unfortunately, systemic race-

---

[4] Sarah Lynch, *In Early action, Biden tries to make good on pledge to heal America's racial divide*, Reuters (Jan. 26, 2021).
[5] Martin Pengelly, *Merrick Garland vows to target white supremacists as attorney general*, The Guardian (Feb. 26, 2021).

baiting is standard operating procedure among many D.C.-based media and politicians. The constant false claim that Mr. Maxwell must be either a white supremacist or associated with white supremacists is seared into the minds of potential District jurors, creating a predisposition toward negative impressions of all politically right-of-center Americans. To obtain an impartial jury, Mr. Maxwell must be tried outside of the District, in a location where the media has not branded him a racist.

Finally, the District is saturated with federal government employees and government contractors. Ordinarily, a jury substantially composed of those connected to the federal government would raise no concerns *vis-à-vis* impartiality. In the instant case, however, Mr. Maxwell and similarly situated defendants have been deemed "insurrectionists" and "extremists." Officials have even issued "domestic terrorism" alarms and bulletins for the District in light of the Capitol breach. A District-composed jury would be drawn from a pool filled with veniremen predisposed to convict Mr. Maxwell based on the belief that he poses an intrinsic danger to government employees in general, regardless of the specific charges and facts presented in court. People like Mr. Maxwell are inherently "bad", and the normal constitutional protections do not apply to him and those like him.

Without a change of venue, Mr. Maxwell's jury will be overwhelmingly (or, perhaps, exclusively) composed of individuals who:

1) Will hate Mr. Maxwell because he is a Trump supporter;

2) Will have nothing culturally in common with Mr. Maxwell;

3) Will be prejudiced by false claims that Mr. Maxwell is a "white supremacist";

4) Will presume that Mr. Maxwell has ties to "white supremacists" or "white nationalists;"

5) Whose main news sources are almost exclusively left-of-center, DC-based press outlets,

which have hardly provided fair and balance coverage of Mr. Maxwell and similarly situated defendants who will feel peer pressure from the local "Constitutional cancel culture" to convict;

6) Who were impacted by the events of January 6th, including by the shutdown of D.C., the high-profile armed military presence in the District and surrounding the Capitol, and the "domestic terrorism" warnings;

7) Who were impacted by protests against Trump and his administration, or actually participated in those protests;

8) Who, if they acquitted a Trump supporter, would risk a backlash from their Trump-hating D.C. co-workers, neighbors, and friends, not to mention condemned by the national media at large.

Mr. Maxwell has a constitutional right to have a fair and impartial jury, which the government simply cannot provide him with a jury pool drawn from the District.

### B. Mr. Maxwell Should be Tried in his Home District of the Middle District of Georgia.

For many reasons, the logical place to transfer this matter for trial is the Middle District of Georgia ("MDGA"), Mr. Maxwell's home district. First, the MDGA is more politically balanced with a potential jury pool that is far less partisan than a D.C. panel. A MDGA panel will also be culturally and ethnically diverse, as it stretches from center portion of Georgia down the Ocmulgee National Monument and includes the University of Georgia. Further, the population of the District of Columbia is just greater than 710,000. In contrast, the Middle District of Georgia is far more populous. The Middle District of Georgia has a population of approximately 2,000,000 people. Perhaps more importantly, while all potential jurors in the MDGA undoubtedly have heard about the Capitol Hill incident, jurors outside of the D.C. media market will have far less exposure to the

non-stop biased and prejudicial press coverage as outlined *supra*. Additionally, since the government and the Court have expressed concerns about Mr. Maxwell and similarly situated defendants being security risks if allowed to enter the District, a trial in Georgia will keep the Mr. Maxwell out of D.C., thus protecting the District from Mr. Maxwell, and him from anticipated D.C. protesters. Next, Mr. Maxwell intends on calling a number of witnesses in his defense, many of whom reside in the MDGA and would face the same backlash as Mr. Maxwell walking the streets of DC. Finally, a MDGA jury is far less likely to have been influenced by the incessant race-baiting spewing out of multiple quarters in the District.

### C. The Court should not wait for *voir dire* to order a transfer of venue.

The Court should not wait until the *voir dire* process to order a transfer of venue in Mr. Maxwell's case. First, because of the previously discussed publicity of the case and strong feelings surrounding potential jurors, it is expected jury selection could take days, if not even weeks. Second, due of the complexity of the instant case, this matter has already been pushed to the middle to end of the upcoming summer.  A postponement caused by juror bias potentially exhibited at *voir dire* could result in Mr. Maxwell being tried in 2024.

## **CONCLUSION**

**WHEREFORE**, Mr. Maxwell, having shown that any potential jury will presumptively be prejudiced against him, thus making it impossible for him to receive a fair trial in the District, respectfully moves this Honorable Court to transfer venue out of the District of Columbia and suggests the Middle District of Georgia, pursuant to the Fifth and Sixth Amendments and Federal Rule of Criminal Procedure 21(a).

Respectfully submitted,

BY:    */s/ Michael T. van der Veen*
       Michael T. van der Veen
       Attorney for Defendant
       Pennsylvania Bar ID #: 75616
       1219 Spruce Street,
       Philadelphia, PA 19107
       Email: mtv@mtvlaw.com
       P: (215)-546-1000
       F: (215)-546-8529

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of March, 2023 a copy of the foregoing *Motion to Change Venue* was electronically filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:

Elizabeth N. Eriksen
1301 New York Ave., N.W., Room 849
Washington, DC 20530
(202) 616-4385
Elizabeth.Eriksen@usdoj.gov

/s/ Michael T. van der Veen
Michael T. van der Veen, Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| | **Case No. 1:22-CR-00099-RJL** |
| **v.** | |
| **JAKE MAXWELL,** | |
| **Defendant.** | |

## <u>ORDER GRANTING MOTION TO CHANGE VENUE</u>

Upon consideration of Defendant Jake Maxwell's Motion to Change Venue, it is

HEREBY ORDERED that Defendant's Motion is GRANTED.


IT IS SO ORDERED.


DATED:


_____
The Honorable Richard J. Leon
United States District Judge