UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No. 1:22-CR-99-RJL |
| | : | |
| **v.** | : | |
| | : | |
| **JAKE MAXWELL,** | : | |
| | : | |
| **Defendant** | : | |

### DEFENDANT'S SUPPLEMENTAL SENTENCING BRIEF

COMES NOW the Defendant, Jake Maxwell ("Mr. Maxwell"), by and through counsel, Michael T. van der Veen and William J. Brennan, hereby submits this Supplemental Sentencing Brief for this Honorable Court's consideration prior to and during the sentencing of Defendant and in support thereof avers as follows:

On April 29, 2024, Defendant appeared before Your Honor for Sentencing. At that time, Defense counsel and the Government argued extensively concerning the appropriate guidelines for this case. Prior to the conclusion of Defendant's Sentencing Hearing, Your Honor advised that both Defense Counsel and the Government may file supplemental briefs as it pertains to the contested guideline calculations. This brief outlines each contested guideline.

### Base Level Offense for Civil Disorder 18 U.S. Code § 231

After the April 29, 2024 Sentencing Hearing, Defense counsel consulted with United States Sentencing Guidelines Expert Robert Weinberger. Based on that consultation, Defense counsel asks this Honorable Court to consider utilizing USSG §2B2.3(b)(1)(A)(vii), which yields a total Offense Level of 6. The base offense level is four (4), however, if the trespass occurred at any restricted building or grounds, there shall be an increase in two (2) levels. Mr. Maxwell was found guilty of being present at the Capitol Grounds when the Capitol Grounds were a restricted place

to be. As such, Mr. Maxwell submits that the crimes for which he was found guilty are most analogous to the crime of trespass, and therefore, the more appropriate Offense Level is a six (6).

In the alternative, Defense counsel asks this Honorable Court to utilize U.S.S.G. §2A2.4, as this crime is most analogous with Obstructing and Impeding Officers rather than Aggravated Assault, which is a crime Mr. Maxwell was found not guilty of. Nonetheless, the Government insists on continuously attempting to back door this enhancement regardless of the Court's verdict.

**U.S.S.G § 2A2.4(b)(1)(A) Physical Contact Enhancement Objection**

U.S.S.G 2A2.4(b)(1)(A) is not applicable to the present case. There is no definition of physical contact under the US Sentencing Commission. However, the Eleventh Circuit has found that § 2A2.4 (b)(1) applies to "**defendant-initiated** physical contact." *United States v. McKeiver*, 982 F. Supp. 842, 845 (M.D. Fla. 1997), aff'd, 158 F.3d 587 (11th Cir. 1998). Further, although no federal court has given an explicit definition of "physical contact," the Seventh Circuit looked to the offense of battery in evaluating the true meaning of physical contact. In doing so, the Court noted, "[w]hile battery is defined as 'intentional and wrongful physical contact with a person,' see BLACK'S LAW DICTIONARY 152 (6th ed.1990), it is clear that the contact between the aggressor and the victim need not be direct, but rather can result from the 'indirect application of force ... by some substance or agency **placed in motion by' the aggressor.**" *United States v. Taliaferro*, 211 F.3d 412, 415 (7th Cir. 2000)(emphasis added)(finding that "defendant's action [of] throwing a cup of urine on a prison guard, amounts to 'physical contact' with the prison guard, and therefore the three-level upward adjustment was warranted.)

The "physical contact" initiated by Mr. Maxwell and the officers in this case is nonexistent. This Honorable Court found that "[f]rom the collective evidence, the Court, too, finds it 'possible' — if not likely — that Mr. Maxwell's contact with the U.S. Capitol Police officer's shield was

more the result of the propelling, pushing crowd and his father's reactive maneuvering than it was his own action." N.T. 11/14/23, p. 398. This Court also noted that, "Officer Harvell himself, whose body-worn camera captured the incident, agreed on cross-examination that it was 'possible' that Mr. Maxwell was 'being pushed' from behind." N.T. 11/14/23, p. 398. The evidence was clear at trial that while Mr. Maxwell's presence on January 6, 2021 at the Capitol was voluntary, all of his movements were not. Even if this Honorable Court were to find an indirect application of force, there is insufficient evidence to conclude that application of forced was placed in motion by Mr. Maxwell, himself. See *Taliaferro, supra.*

The Government relies upon *United States v. Beltran-Higuera* to say that Mr. Maxwell could reasonably see that his actions could bring about physical contact with federal officers. However, that case involved a co-defendant who was found guilty of accessory after the fact of assaulting United States Coast Guard officers. Importantly, the co-defendant **had already seen** Mejia–Leyva aggressively and violently resist arrest when he rammed the USCG vessel. See *United States v. Beltran-Higuera*, 642 F. App'x 780, 784 (9th Cir. 2016). Here, Mr. Maxwell could not reasonably have foreseen he would be pushed and thrown into the police line. Specifically, Mr. Maxwell "did not know that it was going to have those kind of people there." N.T. 11/9/23, p. 330. Mr. Maxwell had no idea what the people dressed in military gear were doing. See N.T. 11/9/23, p. 342. Lastly, Mr. Maxwell testified that when he saw all of the bad things that people were doing to police, the crowd was too big to leave. N.T. 11/9/23, p. 309.

The Government also relies upon *United States v. Stevenson* to say that whether a Defendant initiates contact is irrelevant for purposes of this enhancement. However, this is nowhere stated in this very brief opinion, and is contradictory to other jurisdictions. Despite that, the Court in *Stevenson* found that "Stevenson admitted that he resisted the officers' attempts to

physically remove him from the car, he necessarily engaged in physical contact." No. 20-3207 U.S. App. LEXIS 35443, at *4 (6th Cir. Nov. 10, 2020). Here, no such finding, or even something similar, exists.

In the present case, it is clear that Mr. Maxwell's movements were reflexive, reactionary, and not of his own volition. There was no intent to come into contact with any officers on January 6, 2021. The offense of Civil Disorder as charged in the case at bar states, "[w]hoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function-- Shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C.A. § 231(a)(3). Importantly, civil disorder requires no physical contact, so simply because there was contact to an extent, does not mean that Mr. Maxwell committed any act that makes the physical contact enhancement applicable.

Notwithstanding the above, even if there is no intent requirement to commit the physical contact, there must still be a voluntary act. As noted above, Mr. Maxwell's movements were not his own, and therefore, U.S.S.G § 2A2.4(b)(1)(A) should not apply.

**§ 3C1.1 Obstruction of Justice Enhancement Objection**

The Government demands that Mr. Maxwell obstructed justice by providing false testimony, and therefore there should be an addition of two (2) points to the base level offense. First and foremost, Mr. Maxwell provided no false testimony to this Honorable Court. Mr. Maxwell testified truthfully, fully and to the absolute best of his ability based upon his honest recollection from two and a half years prior.

This District has found that, "[i]n order for [3C1.1] adjustment to apply, the Court must find that the defendant (1) gave false testimony, (2) concerning a material fact, (3) with the intent to deceive, rather than as a result of confusion, mistake or faulty memory." *United States v. Irving*, 593 F. Supp. 2d 140, 141 (D.D.C. 2009). The Court in *Irving* went on to quote the United States Supreme Court stating, "[N]ot every accused who testifies at trial and is convicted will incur an enhanced sentence ... for committing perjury.... [Rather,] if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice, or an attempt to do the same, under the perjury definition we have set out." *Id*. at 141-42(quoting *United States v. Dunnigan*, 507 U.S. 87, 95 (1993)).

At the April 29, 2024 Sentencing Hearing, the Government was asked if they were contending Mr. Maxwell committed perjury while he testified. The Government replied "no." The two are one in the same. Either Mr. Maxwell lied on the stand, and thus committed perjury, or he did not. This Court's verdict and the evidence submitted shows Mr. Maxwell did not obstruct justice. Mr. Maxwell gave his rendition of events as he remembered them and from his subjective perspective. Two individuals can have two different recollections of an event without one of them providing false information.

The Government contends that Mr. Maxwell lied when he testified that he did not join a mob that hurt police. Although the Court found that Mr. Maxwell joined in a crowd that he knew included assaultive rioters, this conclusion was made for the purpose of determining that Mr. Maxwell intended to obstruct, impeding or interfere with police. The Court did not find that Mr. Maxwell joined a mob or a group of people to hurt police. Therefore, Mr. Maxwell did not provide false testimony and in turn obstruct justice.

Lastly, the Government states that because Mr. Maxwell was impeached by a video of him looking over into an area of space and seeing individuals becoming violent with police that he provided false testimony. First, Mr. Maxwell testified to the best of his recollection that he could. He testified after viewing the video that "it looks like" he saw people fighting prior to reaching the front of the line. Notably, however, Mr. Maxwell had previously testified in the following way:

> [Attorney Whitesel]: And you saw the police, obviously.
> [Mr. Maxwell]: Yes, sir.
> [Attorney Whitesel]: And were they wearing armor?
> [Mr. Maxwell]: I mean, riot gear.
> [Attorney Whitesel]: Okay. And I think you testified earlier, you called them the police that were defending the Capitol.
> [Mr. Maxwell]: Yes, sir.
> [Attorney Whitesel]: Who were they defending the Capitol from?
> [Mr. Maxwell]: The bad people in the crowd.
> [Attorney Whitesel]: The bad people in the crowd?
> [Mr. Maxwell]: The people that were doing bad things to them. Yes, sir.
> [Attorney Whitesel]: Who were the people who were doing bad things in the crowd?
> [Mr. Maxwell]: As you see in the video, the people throwing things and actually assaulting them.

N.T. 11/9/23, p. 309.

The exchange prior to the "impeachment" was as follows:

> [Attorney Whitesel]: And while you were in the crowd at the Capitol you started seeing people fighting the police. Right?
> [Mr. Maxwell]: At the front of the line, yes.
> [Attorney Whitesel]: So this was before you were actually at the very, very front of the crowd.
> [Mr. Maxwell]: Well, not the very front. I mean, we definitely saw some things but we were already in the midst of a lot of people.
> …
> Q. Is it your testimony that you were not at the very front of the crowd when you first saw people start to fight the police?
> A. Well, police in particular, no, because I wouldn't have been able to see that police line if I wasn't at the front, like directly. If that makes sense.

N.T. 11/9/23, p. 310-311.

6

Mr. Whitesel then shows Mr. Maxwell Exhibit 502. Mr. Maxwell does not come into frame on Exhibit 502 until approximately the 43 second mark. At this point, it is ambiguous whether there is any fighting happening in that moment. However, Mr. Whitesel asks Mr. Maxwell, "So before you all were at the front of the line, you saw people fighting police officers. Correct?" Mr. Maxwell replies, "[i]t looks like that on this video." N.T. 11/9/23, p. 313.

Simply because Mr. Maxwell does not recall seeing individuals assaulting police officers prior to reaching the front of the line or when he gets to the front of the line does not mean he provided false testimony. Rather, Mr. Maxwell testified that there were bad people there doing inexcusable things to police officers. At no point did he say he never saw any of that occurring. It is easy to show a video from above to imply that Mr. Maxwell should have seen instances of police officers being assaulted, but that was not the question. As the Court knows, at the time of the incident, Mr. Maxwell was 19 years old. When he testified at trial, almost three (3) years had passed, making it implausible for him to remember every nuance from that chaotic day. As such, at no point did Mr. Maxwell provide false testimony, and therefore U.S.S.G. 3C1.1 does not apply.

**§ 3E1.1 Acceptance of Responsibility**

When considering whether a defendant qualifies for the two (2) point reduction, the following are non-exhaustive, appropriate considerations:

> (A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct). **Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a).** A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;

>
> (B) voluntary termination or withdrawal from criminal conduct or associations;
> (C) voluntary payment of restitution prior to adjudication of guilt;
> (D) voluntary surrender to authorities promptly after commission of the offense;
> (E) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;
> (F) voluntary resignation from the office or position held during the commission of the offense;
> (G) post-offense rehabilitative efforts (e.g., counseling or drug treatment); and
> (H) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

U.S.S.G. §3E1.1 (emphasis added).

The applicable considerations in the present case include the fact "that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a)." It was Mr. Maxwell's own testimony that in fact convicted him. Specifically Mr. Maxwell testified that "[w]e just wanted to observe what was going on that day as well as in my view protest. Peacefully." N.T. 11/9/23, p. 278. Mr. Maxwell admitted he wanted to go there and protest, a fact that this Court found was intended to disrupt Congress. N.T. 11/14/23, p. 404. Mr. Maxwell went on to say, "[b]ack then I wasn't thinking about it, but now, I should have known that I wasn't supposed to be there." N.T. 11/9/23, p. 303.

Also important when considering whether an individual has accepted responsibility is the post-offense rehabilitative efforts. While the Commentary to U.S.S.G. 3E1.1 gives examples of counseling and drug treatment, Mr. Maxwell submits his remorse is an example of rehabilitative efforts, as the consequences his actions have brought have been deterrence in it of themselves. Importantly, when asked if he regretted entering the Capitol Grounds, Mr. Maxwell confirmed he did. *See* N.T., 11/9/23, p. 322.

The Government demands that Mr. Maxwell cannot accept responsibility because he pushed the Government to their burden and in the submitted sentencing memorandum maintained

8

his innocence. Mr. Maxwell maintains a Fifth Amendment right against self-incrimination, and therefore, should not be penalized simply because he did not concede his guilt in his sentencing memorandum, but rather accepted responsibility on the stand and under oath during trial.

Also a consideration when determining if an individual qualifies for the acceptance of responsibility reduction is whether an individual voluntarily assisted authorities in the recovery of the fruits and instrumentalities of the offense. Mr. Maxwell was cooperative throughout the entire process from investigation to the present with authorities. Mr. Maxwell even drove to Athens, Georgia to meet with FBI Agents after January 6th and explain his version of events, and even identified himself in the photos and videos shown to him. As such, when viewed in totality, it is clear that Mr. Maxwell accepted responsibility and § 3E1.1 should apply.

### § 4C1.1 True-Zero

Mr. Maxwell is a quintessential true-zero, as the guidelines suggest. An individual is entitled to a two (2) point reduction if they satisfy all of the following requirements:

> (1) the defendant did not receive any criminal history points from Chapter Four, Part A;
> (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);
> (3) the defendant did not use violence or credible threats of violence in connection with the offense;
> (4) the offense did not result in death or serious bodily injury;
> (5) the instant offense of conviction is not a sex offense;
> (6) the defendant did not personally cause substantial financial hardship;
> (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
> (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and

9

> (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

U.S.S.G. § 4C1.1

The Government agrees that Mr. Maxwell satisfies nine (9) of the above requirements. The Government, however, contends that Mr. Maxwell should not receive the 4C1.1.

As a preliminary matter, during the first portion of the Sentencing Hearing, the Government contended that 4C1.1 does not apply to individuals convicted of offenses surrounding January 6, 2021. Yet, the Government provides no support or citation as to where this purported fact came from. Rather, the Government is doing everything they possibly can to increase the offense level in this case because they have no other choice. The Government is attempting to recover from their nearly unblemished felony conviction record on January 6th cases being broken through this baseless contention. However, if this made-up theory was true, the Sentencing Commission would have noted that assertion in the guidelines since the latest edition was passed after the January 6, 2021 incident at the Capitol.

Next, Mr. Maxwell was found by the Court to not have used violence or credible threats of violence, *See* N.T. 11/9/23 p. 405, and therefore qualifies for an adjustment pursuant to §4C1.1. As discussed at length during the April 29, 2024 Sentencing Hearing, the current matter is analogous to a recent decision in the District Court for the District Columbia, namely, *United States v. Yang*, No. 23-100 (JDB), 2024 U.S. Dist. LEXIS 22938 (D.D.C. Feb. 9, 2024). In *Yang*, the Defendant pled guilty to civil disorder and the issue concerning applicability of 4C1.1 was raised. It is important to note that in *Yang*, the Defendant conceded the three-point physical contact enhancement. Here, that is still in dispute.

In applying 4C1.1, the Court in *Yang* focused on the definition of violence and threats of violence. Specifically, the Court noted,

10

> [c]ontemporary dictionaries define "violence" as "[t]he use of physical force, usu[ally] accompanied by fury, vehemence, or outrage; esp[ecially], physical force unlawfully exercised with the intent to harm," Violence, Black's Law Dictionary (11th ed. 2019), or as "the use of physical force so as to injure, abuse, damage, or destroy," Violence, Merriam Webster, https://www.merriam-webster.com/dictionary/violence. These definitions draw additional support from case law interpreting "violence" in similar contexts. See, e.g., *United States v. Pineda-Duarte*, 933 F.3d 519, 523 (6th Cir. 2019) (defining "violence," as used in § 2D1.1(b)(2), as "acts where one uses physical force with the intent to injure"); *United States v. Atkinson*, 815 F. App'x 704, 708 (4th Cir. 2020) (unpublished per curiam) (same).

*Id*. at 8-9.

Even if this Honorable Court were to determine that there existed physical contact to the extent necessary for the sentencing enhancement, as with *Yang*, that is not enough to rise to the level of threat that precludes an additional from receiving the 4C1.1 reduction. As noted by the Court in *Yang*, "[e]ven assuming Yang applied 'physical force' insofar as he briefly made physical contact with two officers, the Court finds that this contact was not made with an intent to harm." *Id*. at 7. Finally, the Government's request that this Honorable Court vary upwards to offset the 4C1.1 application is without merit and illogical and this Honorable Court should regret such theory as the Court did in *Yang*. As such, Mr. Maxwell is a true-zero and should receive the 4C1.1 reduction.

Respectfully Submitted,

Date: May 15, 2024

/s/ Michael T. van der Veen
Michael T. van der Veen
Attorney for Defendant
Pennsylvania Bar No. 75616
van der Veen, Hartshorn, Levin & Lindheim
1219 Spruce Street
Philadelphia, PA 19107
P: (215) 546-1000
F: (215) 546-8529
mtv@mtvlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of May, 2024 a copy of the foregoing *Supplemental Sentencing Brief* was electronically filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:

Elizabeth N. Eriksen
1301 New York Ave., N.W., Room 849
Washington, DC 20530
P: (202) 616-4385
Elizabeth.Eriksen@usdoj.gov

/s/ Michael T. van der Veen
Michael T. van der Veen, Esq.